IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF IOWA

| | |
|---|---|
| IN RE: | ) |
| | ) Chapter 7 |
| WAYNE THOMAS MERCURAL, | ) |
| | ) Bankruptcy No. 17-00144 |
| Debtor. | ) |

**RULING ON MOTION TO DISMISS OR CONVERT**

This matter came on for hearing on August 16, 2017 in Sioux City, Iowa. Kirk Goettsch appeared for Creditors Robert Mark Waggoner and Elaine Waggoner ("the Waggoners"). Wil Forker appeared for Debtor Wayne Thomas Mercural ("Debtor"). The Court took the matter under advisement. The parties filed briefs. This is a core proceeding under 28 U.S.C. § 157(b)(2).

**STATEMENT OF THE CASE**

The Waggoners ask the Court to convert Debtor's Chapter 7 case to Chapter 11, Chapter 13, or to dismiss the case under various code sections. In general, the Waggoners argue that Debtor should not receive Chapter 7 relief because he has substantial disposable income and a strong ability to pay. Debtor resists. Debtor argues that the sections the Waggoners rely on do not apply here and that the cost of administering a Chapter 11 would be prohibitive. The Court agrees with Debtor and denies the motion.

## FINDINGS OF FACT

The Waggoners are creditors in Debtor's bankruptcy. In 2002, the Waggoners loaned money to Debtor for his business, Custom Dollar Systems, LLC. In 2010, these loans were rewritten into a single $75,000 promissory note. Debtor or Debtor's business made one $1,000 payment on the note. Neither Debtor nor his business made any other payments.

On June 15, 2011, the Waggoners sued Debtor and his business on the note in state court and obtained a judgment. The Iowa District Court entered a $74,000 judgment against Debtor at 18% interest. The Court also awarded the Waggoners attorney's fees.

On February 17, 2017, Debtor filed this Chapter 7 bankruptcy. The Waggoners' $150,510.36 claim is the primary debt in this bankruptcy. Debtor's total liabilities in this bankruptcy are $155,252.36.

According to Debtor's tax returns, he made $46,473 in 2014, $56,152 in 2015, and $48,761 in 2016. In the first six months of 2017, Debtor received $33,829.10 in income. Debtor is a salaried employee, but part of his income is commission and varies significantly from month to month. Debtor has a disposable income of $1,988.29 per month. Debtor notes that he no longer operates the business for which he incurred the debt. Debtor also lives with and supports his girlfriend.

## ARGUMENTS

The Waggoners filed a motion to convert or dismiss this bankruptcy. The Waggoners ask the Court to convert the case to Chapter 11 or 13, or to dismiss the case under § 707(a), § 305(a)(1), or §105(a). The Waggoners' primary argument under each of these sections is that Debtor has the ability to pay his debts.

The Waggoners argue that the Court should convert the case to Chapter 11 under § 706(b) or Chapter 13 under § 105(a). The Waggoners argue that a debtor's ability to pay is the primary factor to consider when deciding whether to convert the case under § 706(b). The Waggoners assert that, based on his tax returns and disposable income, Debtor has a strong ability to pay. The Waggoners believe that, based on Debtor's income in the first half of the year, his disposable income for 2017 will be even higher. Based on this evidence, the Waggoners alternatively argue that the case should be dismissed under § 707(a), § 305(a)(1) or § 105(a).

Debtor resists. He argues that he does not have a strong ability to pay. He contends that conversion to a Chapter 11 under § 706 is improper because of the administrative costs. He argues that he does not even have assets with which to pay the filing or conversion fees, among other expenses that come with Chapter 11. Debtor argues that the law does not permit forced conversion to Chapter 13. Debtor also argues that there is no basis for dismissal under any of the sections on which the Waggoners rely.

## CONCLUSIONS OF LAW AND ANALYSIS

### I. Conversion

The Waggoners ask the Court to convert this case to Chapter 11 under § 706. They alternatively ask the Court to convert this case to a Chapter 13 under the Court's broad equitable authority in § 105. The Court addresses these issues in turn.

### A. Conversion to Chapter 11 Under § 706

Bankruptcy Code § 706 provides, "On request of a party in interest and after notice and a hearing, the court may convert a case under this chapter to a case under chapter 11 of this title at any time." 11 U.S.C. § 706. "[C]onversion under § 706(b) is not conditioned upon any specific factors, or limited to any subset of debtors." In re Decker, 535 B.R. 828, 834–35 (Bankr. D. Alaska), aff'd sub nom Decker v. Office of the United States Tr., 548 B.R. 813 (D. Alaska 2015). The decision is left to the discretion of the court. Id. at 835.

"In the Eighth Circuit, the decision whether to convert is based on what will most inure to the benefit of all parties in interest." James v. West (In re West), Bankr. No. 16-40358, Adv. No. 16-04083, 2017 WL 746250, at *14 (Bankr. W.D. Mo. Feb. 24, 2017) (internal quotation marks omitted) (quoting Schlehuber v. Fremont Nat'l Bank & Tr. Co. (In re Schlehuber), 489 B.R. 570, 573 (B.A.P. 8th Cir. 2013)). "The movant generally bears the burden to show grounds for

conversion to Chapter 11 under § 706(b). This burden includes showing a debtor's ability to reorganize through a Chapter 11 plan." In re West, 2017 WL 746250, at *13 (citation omitted).

Ability to pay is an appropriate and important factor that the Court should consider in evaluating a motion to convert under § 706(b). In re Schlehuber, 489 B.R. at 573–74, aff'd, 558 F. App'x 715 (8th Cir. 2014); see also In re Decker, 535 B.R. at 839 (rejecting debtors' argument that their ability to pay is outside the scope of § 706(b) because considering ability to pay effectively imports § 707(b)'s means test). The Bankruptcy Appellate Panel (BAP) of the Eighth Circuit has concluded that a bankruptcy court "acted within its discretion by determining that the Debtor's ability to pay was 'far and away an important factor under [§ ] 706(b),' and converting the case to Chapter 11." In re Schlehuber, 489 B.R. at 575 (alteration in original). The BAP also explained that under § 706(b) "it is not necessary that a Chapter 11 debtor be engaged in business to reorganize." Id.

"The ability to pay creditors is meaningless, however, if a debtor does not have the ability to successfully reorganize." In re Decker, 535 B.R. at 840. Courts should also consider whether there is a business to reorganize, the operations of the business, the debtor's assets, and the "amount of administrative expenses which would accrue in a Chapter 11 case." In re Ryan, 267 B.R. 635, 638 (Bankr. N.D. Iowa 2001). "[T]ypical attorney fees and expenses for individual Chapter 11s

5

average $20,000 or more." In re West, 2017 WL 746250, at *14. In weighing the interests of the parties, courts should determine if conversion would lead to a net benefit to the parties as a whole and not one party individually. See In re Karlinger-Smith, 544 B.R. 126, 133 (Bankr. W.D. Tex. 2016).

Here, the Waggoners have shown that Debtor has some disposable income and therefore some ability to pay. However, the Court must weigh this ability to pay against the reorganization costs that Debtor would incur. Reorganization under Chapter 11 is expensive for an individual. Debtor simply does not have the financial resources necessary to reorganize successfully under Chapter 11. The administrative expenses and fees of a Chapter 11 conversion would greatly deplete Debtors financial resources and all but negate any meaningful payment to creditors. Additionally, Debtor no longer operates a business to reorganize.

The Waggoners have not shown that Debtor has the ability to reorganize under Chapter 11. They have made no showing that he could meet the intensive and costly requirements of Chapter 11. Debtor is an individual with a modest income and a single large business debt. Chapter 11 would be inappropriate for this case. After considering all of the relevant factors, the Court declines to convert the case to Chapter 11.

### B. Conversion to Chapter 13 under § 105

"[A] debtor cannot be placed into chapter 13 involuntarily." In re Jacobsen, 609 F.3d 647, 659 (5th Cir. 2010) (internal quotation marks omitted). "Congress intended Chapter 13 proceedings to be entirely voluntary[.]" Tidewater Fin. Co. v. Williams, 498 F.3d 249, 252 (4th Cir. 2007). Debtor resists conversion and wishes to proceed with a Chapter 7 bankruptcy.

The Waggoners argue the Court should nevertheless look to § 105(a) and use its broad equitable power to convert the case to Chapter 13. Under § 105(a), "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

"Bankruptcy courts' power under § 105(a) is limited, however: 'it is quite impossible to [carry out the Code's provisions] by taking action that the Code prohibits.'" In re Chambers, Bankr. No. 16-00552, 2017 WL 3704547, at *8 (Bankr. N.D. Iowa Aug. 24, 2017) (alteration in original) (quoting Law v. Siegel, 134 S. Ct. 1188, 1194 (2014)); see also In re Hewitt, Bankr. No. 15–00602, 2015 WL 9239130, at *4 (Bankr. N.D. Iowa Dec. 16, 2015) ("Section 105(a) gives this Court the equitable power to 'carry out' the provisions of the Bankruptcy Code, not to contravene them."). The Court does not have power under § 105(a) to convert Debtor's bankruptcy to Chapter 13 involuntarily. Thus, the Court denies the Motion to Convert.

## II.     Dismissal

The Waggoners also ask the Court to dismiss the case. The Waggoners seek dismissal under § 707, § 305(a)(1), and § 105(a) because Debtor has the ability to pay some or all of his debts.

### A. Dismissal Under § 707

Section 707(a) provides:

> **The court may dismiss a case** under this chapter only after notice and a hearing and only **for cause**, including—
> (1) unreasonable delay by the debtor that is prejudicial to creditors;
> (2) nonpayment of any fees or charges required under chapter 123 of title 28; and
> (3) failure of the debtor in a voluntary case to file, within fifteen days or such additional time as the court may allow after the filing of the petition commencing such case, the information required by paragraph (1) of section 521(a), but only on a motion by the United States trustee.

11 U.S.C. § 707(a). "The determination of what constitutes 'cause' to dismiss an individual debtor's chapter 7 case is left to the discretion of the court." In re Chovev, 559 B.R. 339, 343–44 (Bankr. E.D.N.Y. 2016). Cause is not limited to the three reasons detailed in the statute because the statute specifically says that cause "includes" those reasons. In re Timmerman, 379 B.R. 838, 845 (Bankr. N.D. Iowa 2007). There are many factors that the court may consider "cause." In re Bushyhead, 525 B.R. 136 passim (Bankr. N.D. Okla. 2015), aff'd, No. 15-CV-89-JED-PJC, 2017 WL 1549467 (N.D. Okla. Apr. 28, 2017) (reviewing courts' various approaches to what may constitute "cause" under § 707(a)).

With that said: "There is one certainty . . . in enacting § 707(a), Congress unequivocally stated that '[t]he Section does not contemplate . . . that the ability of the debtor to repay his debts in whole or in part constitutes adequate cause for dismissal.'" Id. at 141–42 (quoting H.R. Rep. No. 95–595, at 380 (1977), reprinted in 1978 U.S.C.C.A.N. 5963, 6336; S. Rep. No. 95–989, at 94 (1978) reprinted in 1978 U.S.C.C.A.N. 5787, 5880); see also In re Goulding, 79 B.R. 874, 876 (Bankr. W.D. Mo. 1987) ("It is difficult to contemplate how Congress could more emphatically have stated that the debtor's net worth or future prospects is not 'cause' as the word is used in Section 707 for dismissal.").

Here, the Waggoners nevertheless ask the Court to consider precisely this factor and dismiss this case. The law is clear, however, that the Court cannot consider ability to pay in deciding whether to dismiss under § 707(a). The Waggoners have not shown that "cause" exists to dismiss the case under § 707(a).

To the extent that ability to pay is considered under § 707, it is under § 707(**b**). "[A]bility-to-pay factors . . . should be analyzed exclusively under § 707(b)." Huckfeldt v. Huckfeldt (In re Huckfeldt), 39 F.3d 829, 832 (8th Cir. 1994) (citing and agreeing with In re Khan, 172 B.R. 613 (Bankr. D. Minn. 1994). But § 707(**b**) is limited to debtors "whose debts are primarily consumer debts." Id. There is no dispute that Debtor's debt is primarily business debt—not consumer debt. Thus, § 707(b) does not apply and dismissal under § 707 is not warranted.

9

### B. Dismissal under § 305(a)(1)

Section 305(a)(1) states that the court may dismiss or abstain from a case if "the interests of creditors and the debtor would be better served by such dismissal or suspension." 11 U.S.C. § 305(a). "[T]he test is whether both the debtor and the creditors would be 'better served' by a dismissal." Eastman v. Eastman (In re Eastman), 188 B.R. 621, 625 (B.A.P. 9th Cir. 1995). "Abstention [under § 305(a)(1)] is an extraordinary power that should be used only in extraordinary circumstances." Pennino v. Evergreen Presbyterian Ministries (In re Pennino), 299 B.R. 536, 538 (B.A.P. 8th Cir. 2003). "When determining whether abstention is appropriate, courts look at the following factors: (1) whether the case is a two-party dispute, (2) the economy and efficiency of administration; (3) the availability of another case or forum to protect the interests of the parties; (4) alternative means of achieving equitable distribution of assets, and (5) the purpose for which bankruptcy jurisdiction has been sought." Id.

Applying these factors here, the Court finds that this is not an extraordinary circumstance that warrants dismissal or abstention under § 305(a)(1). Although this is largely a two-party dispute, dismissal is not in the best interests of both the Waggoners and Debtor. There is nothing in the record showing that there will be problems administering this bankruptcy. There is nothing in the record showing that another case or forum would be better for resolving the dispute. There is also

10

nothing in the record to show that there is an adequate alternative means of achieving equitable distribution of assets.  Although the Waggoners allege that Debtor brought this bankruptcy for an improper purpose, they presented no evidence to support that allegation.  The Waggoners simply assert that Debtor filed mainly to discharge his debt to them.  The fact that a debtor seeks a discharge, standing alone, is not an improper purpose.  The Waggoners rely on Debtor's ability to pay, which is not a factor under § 305(a)(1).  The Court will not dismiss, or abstain from, the case under § 305(a)(1).

### C. Dismissal under § 105(a)

As discussed previously, § 105(a) grants the court power to issue any order necessary to carry out the provisions of the Bankruptcy Code.  § 105.  Congress enacted § 105 to assist the bankruptcy judge in "fulfilling his substantive duties to protect the estate, creditors, and debtors in a bankruptcy action."  Resolution Tr. Corp. v. Allied Stores Corp. (Matter of Federated Dep't Stores, Inc.), 133 B.R. 886, 890 (S.D. Ohio 1991).  "[T]he equitable powers emanating from § 105(a) . . . are not a license for a court to disregard the clear language and meaning of the bankruptcy statutes and rules."  Barbieri v. RAJ Acquisition Corp. (In re Barbieri), 199 F.3d 616, 620–21 (2d Cir. 1999) (internal quotation marks omitted) (quoting Official Comm. of Equity Sec. Holders v. Mabey, 832 F.2d 299, 302 (4th Cir. 1987)).

11

Here, the Waggoners argue that the Court should use its equitable power under § 105 to dismiss the case because Debtor has the ability to pay his debts. Both § 707 and § 305(a)(1) provide standards for dismissal of a bankruptcy proceeding. The relief that they ask for under § 105 is functionally the equivalent to that specified under § 707 and § 305(a)(1). The Court has already found that relief under those sections is not warranted here. Dismissing the case under § 105 would impermissibly disregard the clear statutory language in those sections governing dismissal. In particular, it would ignore Congress' clear intention that "cause" under § 707(a) does not include a debtor's ability to pay. The Court finds that dismissal under § 105 is not warranted in this case.

## CONCLUSION

**WHEREFORE**, the motion to dismiss or convert is DENIED.

Dated and Entered:

December 1, 2017

_____
THAD J. COLLINS
CHIEF BANKRUPTCY JUDGE